**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESTER GIOVANNY GARCIA MEJIA,<br><br>                        Petitioner,<br><br>    v.<br><br>KRISTI NOEM, PAMELA BONDI,<br>TODD LYONS, FERETI SEMAIA,<br>ERNESTO SANTACRUZ,<br><br>                        Respondents. | Case No. 5:25-cv-03504-MRA-JDE<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [5]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 5. Petitioner requests that the Court order his immediate release from custody and bar his re-detention unless and until Respondents prove by clear and convincing evidence that he is a flight risk or a danger to his community. *Id.* at 6. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

**I.  BACKGROUND**

Petitioner Lester Giovanny Garcia Mejia ("Petitioner") filed this habeas petition on December 23, 2025, in which he makes the following allegations. ECF 1. Petitioner fled Guatemala with his partner and his partner's daughter to seek asylum in the United States. *Id.* at 1. Petitioner entered the United States on or about October 6, 2023, and was detained

by United States Border Patrol that same day. *Id.* On October 7, 2023, Border Patrol released Petitioner on his own recognizance "due to lack of bed space." *Id.* at 1-2. Petitioner was subject to electronic monitoring and required to check in with Immigration and Customs Enforcement ("ICE") every month. *Id.* at 2. Petitioner complied with the conditions of his release and immediately informed ICE when his electronic monitor appeared "glitchy." *Id.* Nevertheless, on or around December 4, 2025, Petitioner received a notice that he needed to attend a check-in for a case revision on December 9, 2025. *Id.* When Petitioner appeared for the check-in, ICE detained him. *Id.* at 3.

Petitioner alleges that he has no criminal history, he was gainfully employed, he has work authorization, and he was the main financial provider for his household prior to his re-detention. *Id.* at 4-6.

Petitioner further alleges that he is seeking asylum, withholding of removal, and relief under the Convention Against Torture based on persecution by a criminal organization in Guatemala due to his relationship with his partner. *Id.* at 4. Petitioner had a master calendar hearing on October 1, 2025, and an individual calendar hearing was scheduled for February 26, 2026. *Id.* at 5. However, since Petitioner was re-detained, a new master calendar hearing was set before an alternative immigration judge, which will slow his proceedings. *Id.* Petitioner is subject to pre-final order of removal detention under 8 U.S.C. § 1226(a) and eligible for release on bond. *Id.* at 9.

In the instant TRO Application, which was filed the same day as the petition, Petitioner requests that the Court enjoin Respondents Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"); Pamela Bondi, United States Attorney General; Todd Lyons, Acting Director of ICE; Fereti Semaia, Warden of the Adelanto ICE Processing Center; and Ernesto Santacruz, Acting Field Office Director of the Los Angeles ICE Office (collectively, "Respondents" or the "government") from continuing to detain him. ECF 5 at 6. Petitioner argues that his "re-detention appears to be arbitrary, as Petitioner received no written notice or prior explanation for his changed circumstances at his ICE Check-In on December 9, 2025." *Id.* at 7. Petitioner alleges that ICE officers

claimed that he missed biometric check-ins but did not provide him with documentation or allow him to "address the discrepancy" through his counsel who was present at the check-in. *Id.* at 7. Petitioner claims that he had been compliant for over two years "despite serious technical glitches" and that ICE is executing an "unlawful policy targeting people for arrest at immigration courthouses and ICE check-in appointments for the purpose of fast-tracking deportations." *Id.*

On December 29, 2025, the government filed an untimely opposition to the TRO Application and an accompanying declaration.[1] ECF 10, 11 (the "Lenardson Decl."). In its Opposition, the government argues that ICE detained Petitioner because he repeatedly failed to comply with the conditions of his supervised release. ECF 10 at 6. Specifically, the government argues that Petitioner committed several violations between June 13, 2024, and November 29, 2025, and that seven of those violations were home visit failures. *Id.*; *see also* ECF 10-2 at 1 (attached exhibit displaying violations log data). The government further argues that it is not foreclosed from using its discretion to detain Petitioner simply because it previously released him. *Id.* While the government maintains that immediate release is not justified, it acknowledges that Petitioner's claims entitle him to a bond hearing. *Id.* at 9.

On December 30, 2025, Petitioner filed a reply brief, requesting that the Court not accept Respondents' untimely opposition and arguing, *inter alia*, that ICE cannot re-detain a noncitizen for technical violations absent changed circumstances that require detention

---

[1] The government presented its filing as a "Reply in Opposition" to the TRO Application in what appears to be an effort to sidestep the Court-ordered deadline to file an opposition brief. *See* ECF 6 (requiring that Respondents file a response by December 26, 2025, and giving *Petitioner* the option to file a reply to any Opposition by December 29, 2025). The government did not seek leave to file a late opposition and does not even attempt to explain why its Opposition was late. Nevertheless, in the interest of adjudicating this case on the merits and because the government's brief concedes that Petitioner is entitled to a bond hearing and does not argue that Petitioner is a flight risk or danger, the Court has considered the contents of the Opposition.

and without first providing Petitioner with written notice and a pre-deprivation bond hearing. ECF 12.

## II. LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard, . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *All. for the Wild Rockies v. Cottrell*, 632 F.3d at 1132.

## III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or has raised serious questions going to the merits of his procedural due process claim, and that the balance of hardships tips sharply in his favor.

### A. Likelihood of Success on the Merits

As an initial matter, it is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same). The government does not dispute this or argue otherwise.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests.

The government does not argue that the *Mathews* test does not apply or deny that the test has been used to address due process claims raised by noncitizens. The government also does not argue that Petitioner does not have constitutional procedural due process rights. In other words, the government does not seem to dispute that Petitioner's private interest in freedom from detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Rather, the government's position is that DHS has discretionary authority to arrest and detain noncitizens pending a decision on whether they are removable under 8 U.S.C. § 1226(a), and that the statute does not require advance notice or a hearing before arrest or re-detention. ECF 10 at 8.

"But the government understates the nature of the liberty interest [at stake], as well as the degree to which existing procedures protect against the erroneous deprivation of that liberty interest." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Civil immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. In

releasing Petitioner on his own recognizance, the government necessarily determined that he was not a flight risk or danger.  *See* 8 C.F.R § 1236.1(c)(8) (authorizing release of noncitizens under 1226(a) if an officer determines that they "would not pose a danger to property or persons," and are "likely to appear for any future proceeding"); 8 C.F.R. § 212.5(b) (authorizing parole from custody of noncitizens deemed "neither a security risk nor a risk of absconding."); *see also Saravia*, 280 F. Supp. 3d at 1176 (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025) (same); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *40 (E.D. Cal. Oct. 16, 2025) (same). Thus, to re-detain Petitioner following release, the government must present "evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk or is now subject to a final order of removal." *Saravia*, 280 F. Supp. 3d at 1176.

Here, the government submits the declaration of Deportation Officer Cortney Lenardson, who is assigned to the Adelanto Field Office and reviewed Petitioner's file, also known as the A-file  ECF 11.  Based solely on the review of DHS's databases, Lenardson declares that Petitioner missed six biometric check-ins between August 7 and November 29, 2025, Petitioner's "biometric match failed" on November 1, 2025, he had five "home visit failed" and two "missed office visit" entries in 2024, and his "tracker was low on battery power on the following dates: July 18, 2024, July 4, 2024, July 1, 2024, June 27, 2024, June 17, 2024."  *See id.*  While these allegations are concerning, the government does not specify which conditions or requirements Petitioner allegedly violated or address Petitioner's responsive arguments that the violations were "technical" in nature, that he alerted ICE as to the issues he had with his electronic monitor, and that he was otherwise compliant.

Even if the Court credits the government's claim that Petitioner violated the conditions of his release, section 1226(a)'s implementing regulations require release of a

detained noncitizen unless the noncitizen poses a danger to the community or is a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196–97 (9th Cir. 2022); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) ("The upshot of these regulations is that detention is permitted under section 1226(a) only if [petitioner] is dangerous or a flight risk."). The government makes no effort to show that Petitioner is a flight risk or danger to the community. *See generally* ECF 10 at 9. Again, while the government points to several alleged violations, it does not explain how those violations make Petitioner dangerous or a flight risk. In addition, Petitioner was re-arrested at his ICE check-in—and not on the street or at home after failing to report or comply with his supervised release—which would support a finding that he is not a flight risk.

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025). Where an individual has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh*, 2025 WL 1918679, at *7. Here, the risk of erroneous deprivation is high because Petitioner argues that the violations were technical in nature, that he has no criminal record, that he was gainfully employed, and that he has strong family and community ties. *See generally* ECF 1, 5. The government does not directly address these arguments, focusing instead on what it considers the proper scope of relief: eligibility for a bond hearing while Petitioner is in custody. ECF 10 at 8-9. In support of its argument, the government relies on two district court cases, where petitioners were not immediately released after they were re-detained. *See Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540, at *1 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, No. C18-287-JLR, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018). Those cases, however, are entirely distinguishable. Unlike here, the petitioners in those cases were subject to final orders of removal, and their detention was governed by 8 U.S.C. § 1231. *See id.* While the post-removal regulations require an opportunity to be

heard in the form of an informal interview, the court in each case found that any failure to follow immigration regulations did not result in any actionable injury because removal was reasonably foreseeable. *Id.* Specifically, in *Ahmad*, ICE had procured a travel document and scheduled the removal. *Ahmad*, 2018 WL 6928540, at *5. Similarly, in *Doe*, the underlying removal order was valid, removal was imminent, and the court found that there was no evidence of an actionable violation of a regulation. *Doe*, 2018 WL 4696748, at *9. Here, by contrast, the government concedes that Petitioner's detention is governed by 8 U.S.C. § 1226, which means Petitioner is not subject to a final order of removal, and removal is not imminent. Thus, not only are these cases non-binding, but they are also inapposite to the situation before the Court. The government provides no other authority for why Petitioner should be detained or why his immediate release is unwarranted.

In addition, the government presents no countervailing interest in re-detaining Petitioner without a pre-deprivation bond hearing. *See generally* ECF 10 at 9-10. Custody hearings are "routine and impose a 'minimal' cost." *Singh*, 2025 WL 1918679, at *8 (quoting *Doe*, 787 F. Supp. 3d at 1094-95). And the government's interest is diminished where, as here, "a person 'has consistently appeared for [his] immigration hearings . . . and [ ] does not have a criminal record." *Id.* (quoting *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025)). Moreover, a pre-deprivation bond hearing would not have interfered with removal proceedings. Petitioner was actually scheduled for his merits hearing before an immigration judge on February 26, 2026. ECF 1 at 5, 19. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros*, 2025 WL 2637503 (citing *Pinchi*, 2025 WL 1853763, at *5).

Thus, each *Mathews* factor favors Petitioner and demonstrates that he is likely to succeed on or at least demonstrated serious questions going to the merits of his procedural due process claim—*i.e.*, that he is entitled to a bond hearing before a neutral arbiter prior to any re-arrest.

### B. Irreparable Harm

Petitioner has also established irreparable harm. "Deprivation of physical liberty by

detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). Moreover, Petitioner alleges that, because of his arrest and detention, he "has lost the ability to earn income to support his partner and her child, who he treats as his own, has been separated from his loved ones and from his community and has experienced severe emotional distress resulting from his detention." ECF 1 at 8 (citing Rabani-Jenkins decl. at ¶¶ 17, 18).

### C. Other *Winter* Factors

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because it would be neither equitable nor in the public interest to allow the government to continue to violate federal law. ECF 5 at 24. The government responds that "[i]t is well settled that the public interest in enforcement of the United States's immigration laws is significant . . . . [and that this] public interest outweighs Petitioner's private interest here." ECF 10 at 9-10 (internal citation omitted). This argument is unavailing where the potential harm to Petitioner is significant, and "Respondents risk only a short delay in detaining Petitioner if Respondents ultimately show that detention is warranted." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *8 (N.D. Cal. Aug. 21, 2025). Moreover, the Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion that the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-*

*CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### D. Scope of Relief

Injunctive relief "should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Petitioner seeks his immediate release. The government argues that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), and therefore is only eligible for a bond hearing while in custody. For the reasons explained above, the government has not established that a pre-deprivation hearing is unwarranted. Moreover, Petitioner cites to numerous district court cases where petitioners were granted the same relief he seeks here. *See* ECF 5 at 9 (citing *Padilla v. Bowen*, No. 2:25-CV-10780 CAS (SK), 2025 WL 3251368, at *6 (C.D. Cal. Nov. 21, 2025); *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025), and others). The Court is persuaded that a pre-deprivation bond hearing is warranted in this case as well, given Petitioner's substantial liberty interests, the government's conduct (re-detaining Petitioner without advance notice or an opportunity to respond to any claim of changed circumstances requiring detention), and the fact that the government has not argued or established in any meaningful sense that Petitioner presents a risk of flight or to public safety.

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Petitioner shall be immediately released from custody.

2. Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing. At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and

3. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written response to the Order to Show Cause no later than **January 12, 2026**. Petitioner shall file a reply no later than **January 15, 2026**. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **January 12, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **January 5, 2026**, and expires at 5:00 p.m. on **January 19, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: January 5, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE