**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Krist Yeremyan,<br><br>        Petitioner,<br><br>    v.<br><br>Warden, Adelanto ICE Processing Center et al.,<br><br>        Respondents. | Case No. 5:25-cv-03504-MRA-JDE<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER [2]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 2. Petitioner requests that the Court enjoin his continued detention based on Respondents' erroneous classification of Petitioner as an "arriving alien" and to order Respondents to provide him a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at 11.

The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

I.      <u>BACKGROUND</u>

Petitioner Krist Yeremyan ("Petitioner") filed this petition for a writ of habeas corpus under 28 U.S.C. § 2441 on February 23, 2026. ECF 1 ("Pet."). Petitioner claims that he was lawfully admitted to the United States on September 24, 2016, pursuant to a

-1-

valid B-2 visa, and was issued a Form I-94 upon his arrival. *Id.* at 6. According to the I-94 attached to the petition, Petitioner is a native and citizen of Armenia. *Id.* at 9.

Petitioner timely filed an asylum application in March 2017. *Id.* at 12. Petitioner's asylum application remained pending for nearly nine years, and Petitioner was never scheduled for an interview during that time. *Id.* at 14. Petitioner has remained compliant with all requirements established by the U.S. Citizenship and Immigration Services ("USCIS"), including notifying USCIS of a change of address, paying the annual asylum fee, and voluntarily appearing for the first affirmative asylum interview that was scheduled on January 15, 2026. Pet. at 6. When Petitioner appeared in good faith for the asylum interview on January 15 at the USCIS office, accompanied by his wife and 11-year-old child, he was arrested by Immigration and Customs Enforcement ("ICE"). *Id.* at 2.

After his arrest, Petitioner was initially detained at the Downtown Los Angeles ICE detention facility and was later transferred to the Adelanto ICE Processing Center. *Id.* at 14. Petitioner then sought to be released on parole. *Id.* Petitioner was denied a bond hearing on February 13, 2026, based on the IJ's classification of Petitioner as an "arriving alien." *Id.* at 2; ECF 2 at 15 (Order of the Immigration Judge denying Petitioner's request for bond hearing).

Petitioner has no criminal record. Pet. at 2. Petitioner has two children, including a one-and-a-half-year-old child who is a United States citizen. *Id.* at 6. Petitioner's parents were granted asylum in the United States, and Petitioner also has a brother who is a United States citizen. *Id.*

Based on these allegations, Plaintiff claims that his detention is unlawful based on the government's improper classification of him as an "arriving alien," and that the denial of bond violated his due process rights. *Id.*

In the instant TRO, Petitioner argues that the government's refusal to grant him a bond hearing is based on the erroneous classification of Petitioner as an "arriving alien." ECF 2 at 4. Petitioner seeks an order requiring Respondents Warden, Adelanto ICE Processing Center; Pamela Bondi, Attorney General; and Kristi Noem, Secretary of the

Department of Homeland Security ("DHS") (collectively, "Respondents" or "the government") to provide him with a bond hearing, or in the alternative, to immediately release him. *Id.* at 11.

The government filed an opposition to Petitioner's TRO Application on February 24, 2026, asserting that "Petitioner appears to a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) *reconsideration granted in part*, --- F. Supp. 3d ---, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), *and amended and superseded on reconsideration*, --- F. Supp. 3d ---, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025)." ECF 6 at 2.  In other words, the government seems to concede that Petitioner is entitled to a bond hearing, yet has not provided one, thus necessitating this habeas petition.

## II.   **LEGAL STANDARD**

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).   Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard, . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker

showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *All. for the Wild Rockies v. Cottrell*, 632 F.3d at 1132.

## III. **DISCUSSION**

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or has raised serious questions going to the merits of his claim that his detention is unlawful based on an erroneous interpretation and application of the applicable statute and regulations.

### A. **Likelihood of Success on the Merits**

The INA provides that "on a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As the Supreme Court has explained, "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR § 236.1(d)(1)). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination." *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). The noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Id.* "If the ICE officer determines that the noncitizen should not be released, the regulations permit the noncitizen to request a bond hearing before an immigration judge at any time before a removal order becomes final." *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19, and *Rodriguez Diaz*, 53 F.4th at 1197).

Here, Petitioner was arrested by ICE and charged as removable under 8 U.S.C. § 1227(a)(1)(B) "as a non-citizen who overstayed after" Petitioner's initial admission on a B-2 visa. Thus, the applicable regulations entitle Petitioner to a bond hearing before an IJ

-4-

to challenge any determination made regarding whether he poses a danger to the community or a flight risk.  8 CFR § 236.1(d)(1)).

When Petitioner sought a custody redetermination, however, the IJ denied his request on the grounds that "the current regulations governing the detention and release of respondents preclude an Immigration Judge from redetermining the custody status of arriving aliens in removal proceedings."  ECF 1 at 10 (citing 8 C.F.R. § 1003.19(h)(2)(i)(B)).  The regulation cited by the IJ provides that an IJ "may not redetermine conditions of custody imposed by the Service with respect to . . . "[ar]riving aliens in removal proceedings."  8 C.F.R. § 1003.19(h)(2)(i)(B).  The IJ also stated that it could not review the propriety of DHS' designation of Petitioner as an arriving alien.  ECF 1 at 10.  Thus, the IJ's denial of bond was based on DHS's classification of Petitioner as an "arriving alien."  But that classification is manifestly wrong under the applicable law.

The regulations define "arriving alien" as

> An applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1.2.  Petitioner arrived in the United States nearly ten years ago pursuant to a lawful visitor visa and was therefore "admitted" to the United States at that time.  *See* 8 U.S.C. § 1101(a)(13)(A) (defining "admission" and "admitted" to "mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"); *see also Shahwan v. Chertoff*, No. C-05-4218 MMC, 2005 WL 3369991, at *3 (N.D. Cal. Dec. 12, 2005) (recognizing that petitioner was "admitted" upon entry to the United States on student visa).  "Consequently, if petitioner subsequently had not left the United States, and had been arrested and placed in removal proceedings, petitioner would be eligible to have an IJ review any custody and/or bond

determinations by ICE." *Shahwan*, 2005 WL 3369991, at *3. At the time he was arrested in January 2026, Petitioner was not "coming or attempting to come into the United States at a port of entry." 8 C.F.R. § 1.2. He therefore does not fall within any of the enumerated categories of "arriving aliens" under the regulatory definition. *Cf. Chavez v. Kaiser*, No. 25-CV-06984-LB, 2025 WL 2909526, at *5 (N.D. Cal. Oct. 9, 2025) ("For decades, DHS applied § 1226(a) to [noncitizens like petitioner who entered without inspection but were apprehended inland], acknowledging they are not 'arriving aliens' at ports of entry.").

Tellingly, Respondents do not make *any* attempt to defend their plainly erroneous classification of Petitioner as an "arriving alien." Instead, Respondents suggest that Petitioner is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). The certified Bond Eligible Class in *Maldonado Bautista*, however, is defined as

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention unde 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

Petitioner is not a member of this class because he did not enter the United States without inspection—he entered lawfully pursuant to a visa. Thus, this case comes to this Court based on the government's incorrect application of the law, and rather than explain or defend that incorrect application, the government offers yet another unsupported argument.

For the foregoing reasons, Petitioner has shown a likelihood of success on the merits of his claim that the IJ's refusal to grant him a bond hearing is contrary to law.

**B.    Irreparable Harm**

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). In addition,

Petitioner shows that his ongoing detention has caused significant distress to his children, and that his separation from his children "creates lasting emotional and developmental consequences." ECF 2 at 9. Respondents do not address these factors.

### C.     **Other *Winter* Factors**

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because he has no criminal record, he has strong family ties and has maintained residence in the United States, and his asylum application has been pending since it was timely filed nine years ago. ECF 2 at 11. Respondents do not address these factors.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion that the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### D.     **Scope of Relief**

Injunctive relief "should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant*

*v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)).  Petitioner seeks a bond hearing within 7 days, or in the alternative, immediate release.  The government argues that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, thereby conceding that Petitioner is, at a minimum, entitled to a bond hearing.  However, rather than provide Petitioner with a bond hearing immediately, the government would rather litigate this matter and have the Court order a bond hearing to which Petitioner is already entitled.  The Court shall do that, but as stated below, the government shall also be required to establish that it has met all procedural requirements in providing that hearing.

The Court exercises its discretion and waives the posting of a bond.  *See* Fed. R. Civ. P. 65(c).

## IV.   CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**.  The Court **ORDERS** as follows:

1. Respondents are enjoined from continuing to detain Petitioner unless Petitioner is provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within 7 days of the date of this Order;

2. Respondents shall file proof that the bond hearing occurred and the decision of the immigration judge and/or the release order within 10 days of this Order;

3. Petitioner may amend the habeas petition and/or seek other emergency relief if the bond hearing does not comply with due process or other applicable laws or regulations;

4. Respondents are additionally temporarily restrained from transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court pending final resolution of this litigation;

5. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.  *See* L.R. 65-1.  Respondents shall file any written

response to the Order to Show Cause no later than **March 5, 2026**. **Failure to file a response will be deemed consent to the issuance of the preliminary injunction.** Upon receipt of Respondents' response, the Court may order Petitioner to file a reply if necessary. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **March 5, 2026**. The Court will order an OSC hearing only if necessary.

6.   Respondents shall serve this Order on Petitioner.

This TRO shall take immediate effect on **February 26, 2026**, and expires at 5:00 p.m. on **March 12, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: February 26, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE

-9-